**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| DAVID LONGWELL, | ) | CASE NO. 8:07CV489 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| OMAHA PERFORMING ARTS SOCIETY, | ) ) | |
| | ) | |
| Defendant. | ) | |

The question before the Court is this: Can an employee whose job was eliminated upon his supervisor's recommendation, made for legitimate business reasons and without discriminatory animus, avoid summary judgment by producing evidence of such animus on the part of another employee who was involved in the decision to accept that recommendation?  The Court concludes that he can.

Before the Court are the Defendant's Motion for Summary Judgment (Filing No. 41), the Plaintiff's Motion to Strike/Objection to Certain Evidence Submitted by Defendant (Filing No. 49), and the Defendant's Objection to the Plaintiff's Index of Evidence (Filing No. 54).  For the reasons described below, the Plaintiff's evidentiary objections will be granted; the Defendant's evidentiary objections will be denied; and the Defendant's Motion for Summary Judgment will be denied with respect to the Plaintiff's claim concerning the elimination of his job, but granted with respect to his failure-to-hire claim.

## FACTS

The Plaintiff David Longwell, a former employee of the Defendant Omaha Performing Arts Society ("OPAS"), alleges that OPAS discriminated against him on the

basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* (Complaint, Filing No. 1).

## *Undisputed Facts*

The parties' briefs in support of and in opposition to the pending Motion for Summary Judgment (Filing Nos. 42, 51 and 53), submitted in compliance with NECivR 56.1, reveal that the following facts are not in dispute.

Longwell was hired by OPAS on September 6, 2005, as its Security Supervisor. Effective November 28, 2005, Julie Bunker, OPAS's Vice President of Facilities and Operations, promoted Longwell to the position of Security Manager, and Longwell received a salary increase. The Security Manager position was new, and had not been posted. During the course of Longwell's employment, OPAS hired 15 to 20 security guards, approximately half of whom were male and half of whom were female.

In April of 2006, Michael Allison, OPAS's Director of Facilities and Longwell's immediate supervisor, recommended that the Security Manager position be eliminated. Allison made this recommendation to Bunker, Michelle Jones (OPAS's Human Resources Director), and Joan Squires (OPAS's President). Allison advised Bunker, M. Jones, and Squires that, by eliminating the Security Manager position, OPAS would save money that could be used to employ more security officers to cover events. On or about May 3, 2006, OPAS informed Longwell that his position had been eliminated. At the time Longwell's position was eliminated, he was earning $40,000 per year.

Mary Pennisi, who had been hired by Longwell as a part-time Security Officer, was promoted by OPAS to a full time position effective May 1, 2006, at the hourly pay of $12.00. On May 3, 2006, OPAS gave Pennisi additional job duties and changed her job

title to Security Coordinator. In July 2006, OPAS gave Pennisi a pay increase of 50 cents per hour, retroactive to May 2006. The Security Coordinator position and the Security Manager position were different in scope, and the Security Coordinator position paid substantially less than the Security Manager position.

On June 20, 2006, Longwell filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC"), alleging that OPAS eliminated his position and created the new Security Coordinator position based on sex discrimination. On September 25, 2007, the EEOC issued Longwell a right-to-sue letter, and Longwell timely brought this action. Effective October 5, 2006, Longwell was hired by Creighton University as a full-time security officer, earning $15.18 per hour.

### *Issues of Fact*

The material factual dispute for purposes of the pending motion centers on whether an alleged anti-male bias on the part of Julie Bunker,[1] was a motivating factor in OPAS's decision to eliminate Longwell's position. In the discussion below, the Court concludes that genuine issues of material fact remain for trial as to (1) whether Bunker had any such discriminatory animus; (2) if so, whether her bias was a motivating factor in OPAS's decision to eliminate Longwell's job; (3) if so, whether OPAS's legitimate reasons, standing

---

1. Q: Is it fair to say, Mr. Longwell, that in this lawsuit your complaints about discrimination are pointed to Julie Bunker?

    A: Yes.

Depo. of David Longwell, Filing No. 43-2; 39:19-22.

alone, would have induced it to make the same decision; and (4) if not, Longwell's damages, if any.

## STANDARD OF REVIEW

In the context of a summary judgment motion, the Court's function is to consider the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor, and to determine whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis omitted)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id*.

Although no separate summary judgment standard exists for the employment discrimination context, *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir. 2006), "[s]ummary judgment should seldom be granted in employment discrimination cases because [in such cases] intent is often the central issue and claims are often based on

inference." *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005) (citing *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004)). That is, because of the difficult evidentiary hurdles often presented, the Court must be "[m]indful that summary judgment should be granted in employment discrimination cases only if the evidence could not support any reasonable inference of discrimination . . . ." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1055 (8th Cir. 2007) (citing *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005)). Stated differently, a nonmoving party "may avoid summary judgment if she presents evidence sufficient for a reasonable factfinder [sic] to infer that the employer's decision was motivated by discriminatory animus." *Fair v. Norris*, 480 F.3d 865, 869 (8th Cir. 2007) (citing *Dionne v. Shalala*, 209 F.3d 705, 709 (8th Cir. 2000)).

**EVIDENTIARY OBJECTIONS**

Longwell objects to OPAS's submission of the NEOC Commission Determination, finding "no reasonable cause" to support the allegations of discrimination (CM/ECF Filing No. 43-15) and the EEOC notice adopting those findings (CM/ECF Filing No. 43-16). Longwell bases his objections on relevance, materiality, hearsay, and foundation. (Filing Nos. 49 and 50). OPAS responds that the documents were provided as "background," and OPAS does not argue that they are admissible over Longwell's objections. (OPAS Reply Brief, Filing No. 53, p. 12-13). Accordingly, Longwell's objection will be sustained, and the Court will give no consideration to those documents.

OPAS objects to certain paragraphs in the affidavits of Longwell (Filing No. 52-2) and Larry Kudrna, a former OPAS employee (Filing No. 52-3). After reviewing the

affidavits and considering OPAS's objections, the Court concludes that the objections (Filing No. 54) should be denied.

## DISCUSSION

### *I.  Direct Evidence of Discrimination*

"A Title VII plaintiff may avoid summary judgment by presenting 'direct evidence' of sex discrimination, that is, 'evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'" *Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 809 (8th Cir. 2007) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). "At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment." *Griffith,* 387 F.3d at 735. "[E]vidence of additional motives, and the question whether the presence of mixed motives defeats all or some part of plaintiff's claim, are trial issues, not summary judgment issues." *Id.*

Direct evidence of discriminatory animus on the part of someone involved in the employer's decision to effect an adverse employment action is sufficient to withstand a motion for summary judgment in a Title VII action. *King v. Hardesty*, 517 F.3d 1049, 1057-58 (8th Cir. 2008) (applying mixed-motives test established in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)[2]). If a prohibited criterion played a motivating role in the

---

[2] The Supreme Court recently cast doubt on the usefulness of the *Price Waterhouse* burden-shifting framework. In *Gross v. FBL Financial Services, Inc.*, 129

employer's decision, then the "employer must show that its legitimate reason, standing alone, would have induced it to make the same decision." *Price Waterhouse*, 490 U.S. at 252. This showing may be made "by a preponderance of the evidence." *Id*. at 253.

Here, Longwell has presented sufficient evidence to create a genuine issue of fact as to whether Bunker had an anti-male bias and wished to replace male OPAS employees with females. (Longwell Aff., Filing No. 52-2, ¶ 6; Larry Kudrna Aff., Filing No. 52-3, ¶ 3. *See also* Deposition of Julie Bunker, Filing No. 43-4, 19:8 to 20:4, denying such bias.)

While it is undisputed that Longwell's immediate supervisor, Michael Allison, initiated the idea of eliminating Longwell's position and assigning more responsibilities to Pennisi, it is also undisputed that Bunker supported those recommendations and was involved in the decision to adopt them:

> Q. Why wasn't Mr. Longwell allowed to apply for the security coordinator position?

---

S.Ct. 2343 (2008), the Court said of *Price Waterhouse*: "Six Justices ultimately agreed that if a Title VII plaintiff shows that discrimination was a 'motivating' or substantial' factor in the employer's action, the burden of persuasion should shift to the employer to show that it would have taken the same action regardless of that impermissible consideration. . . . Justice O'Connor further found that to shift the burden of persuasion to the employer, the employee must present 'direct evidence that an illegitimate criterion was a substantial factor in the [employment] decision.'" *Gross,* 129 S.Ct. at 2347. "[T]he [Eighth Circuit] Court of Appeals identified Justice O'Connor's opinion as controlling." *Id.* at 2348. "Congress has since amended Title VII by explicitly authorizing discrimination claims in which an improper consideration was 'a motivating factor' for an adverse employment decision. See 42 U.S.C. §2000e-2(m) (providing that 'an unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was *a motivating factor* for any employment practice, even though other factors also motivated the practice" (emphasis added)." *Id*. at 2349. "Whatever the deficiencies of *Price Waterhouse* in retrospect, it has become evident in the years since that case was decided that its burden-shifting framework is difficult to apply. . . . [E]ven if *Price Waterhouse* was doctrinally sound, the problems associated with its application have eliminated any perceivable benefit to extending its framework . . . ." *Id*. at 2352.

> A. . . . Mike was I would rather, you know, eliminate the security manager position, because I need to put more – they make more, and I need more security officers on the floor. So he made the decision, . . . we had to eliminate one of those positions, and he wanted to eliminate that one, because it made more money, he needed more security officers, and he didn't want to eliminate the full-time security officer position.

Deposition of Michelle Jones ("Jones Depo."), Filing No. 43-5, 16:12 to 17:3. (See also Statements of Material Fact in the parties' briefs, Filing No. 42, p.10, ¶ 21,[3] and Filing No. 51, p.5, ¶ 21, Response.)

> Q. Was Julie Bunker involved in the decision making?
>
> A. I think myself, Mike, Julie and Joan were. I think Mike initiated it. I mean, he came up with the plan, but she obviously would have been involved in the final decision because we ran things up to the president."

Jones Depo., 17:4-10.

> Q. Did you make the decision to terminate Mr. Longwell?
>
> A. I made the decision to support the recommendation of Michael Ellison, [sic] which was that he – that we eliminate that position and that he assume those duties.
>
> Q. Okay. Did you make the decision to create a position entitled security coordinator?
>
> A. I supported Michael Ellison's [sic] recommendation that we add that position.
> . . . .
>
> Q. Did you decide to hire Mary Pennisi for the security coordinator position?

---

[3] " In April 2006, OPAS management decided to eliminate the Security Manager position. Allison, a male, made the recommendation to eliminate the Security Manager position to Bunker, M. Jones, and Squires. Allison advised Bunker, M. Jones and Squires that by eliminating the Security Manager position, OPAS would be able to save money and use more security officers to cover events and to have solely customer/patron, service oriented security officers." (Internal citations to the record omitted).

> A.  No.  Michael Ellison [sic] made that decision.
>
> Q.  Were you involved with it in any way?
>
> A.  I had to sign off on it, I would assume.  If I remember correctly, the vice president of whatever department had to sign the form.

Deposition of Julie Bunker ("Bunker Depo."), Filing No. 43-4, 8:16-25, 9:7-14.

> I have restructured the Facilities Department in order to streamline processes and improve efficiencies.  As a result, I have made the following changes, effective today:
>
> The Security Manager position has been eliminated.  The Director of Facilities, Michael Allison, will manage all security functions.  The Security Coordinator, Mary Pennisi, is responsible for coordinating the scheduling of officers, bagging meters and reserving parking spaces.

Memo from Julie Bunker dated May 3, 2006, Filing No. 43-19.

Longwell has presented sufficient evidence of a specific link between Bunker's alleged discriminatory animus and the elimination of his job.  The credibility of Longwell, Kudrna and Bunker, regarding Bunker's alleged statements exhibiting anti-male bias, is a question of fact for the jury.  *See Swift & Co. v. Elias Farms, Inc.*, 539 F.3d 849, 854 (8th Cir. 2008).  OPAS's additional legitimate motives for the elimination of Longwell's job do not entitle OPAS to summary judgment.

To clarify what issues remain for trial in this case, and what do not, the Court will also address Longwell's claims in the context of indirect evidence of discrimination.

## *II.  Indirect Evidence of Discrimination*

"A Title VII plaintiff may also avoid summary judgment by producing 'sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm.'" *Fjelsta,* 488 F.3d at 810, quoting *Griffth*, 387 F.3d at 736.

9

> Under that familiar three-step formula, plaintiff must first present a prima facie case of intentional discrimination. The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. If defendant meets that minimal burden, plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful . . . discrimination.

*Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Longwell asserts, and the record reflects, that his position was eliminated. (*See* Longwell Depo., 43:19 to 36:1; and Memo of Julie Bunker, dated May 3, 2006, Filing No. 43-19.)

> *McDonnell Douglas* teaches that the plaintiff in a discharge case may satisfy his prima facie case burden by showing (i) that be belongs to a protected class; (ii) that he was qualified for a job; (iii) that he was discharged; and (iv) that, after his discharge, he was replaced by a person with similar qualifications. Absent a showing that plaintiff was replaced, he may still meet his flexible prima facie case burden, but the record reflects that his position was eliminated. In reduction-of-force cases, we have always required "some additional showing" that discrimination was a factor in the termination.

*Fjelsta*, 488 F.3d at 736 (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003)).

There is no dispute that Longwell has satisfied the first two prongs of his *prima facie* case, in that he is a member of a protected class (male), and he was qualified for the job of OPAS's Security Manager. Because his job was eliminated, he must make some showing that discrimination was a factor in the elimination of his position. Longwell has satisfied the third prong of the *prima facie* case by presenting evidence of discriminatory animus on the part of Bunker, and by presenting evidence that Bunker was involved in the decision to eliminate Longwell's position.

The burden then shifts to OPAS to articulate a legitimate, nondiscriminatory reason for its action, and OPAS has done so. The undisputed evidence demonstrates that OPAS's Director of Facilities, Michael Allison, recommended that the Security Manager position be eliminated so that OPAS could afford more security officers. Allison recommended the elimination of the Security Manager position rather than the full-time Security Officer position, held by Pennisi, because the Security Manager position paid more and its elimination would save OPAS more money. *See* Jones Depo., 16:12 to 17:3.

The burden then shifts back to Longwell to show that this proffered, nondiscriminatory reason was merely a pretext for unlawful sex discrimination. Longwell has offered no evidence from which a reasonable finder of fact could infer that OPAS's proffered reason for its actions was a pretext for sex discrimination. There is no evidence that Allison had any discriminatory animus. Allison was in fact a member of the same protected group as Longwell – male. There is no evidence that Jones's testimony, "Mike initiated it," and "he came up with the plan," was false or in error; nor is there any suggestion that Jones's recollection of Allison's stated rationale for the recommendation was faulty.

Because Longwell has failed to make any showing that OPAS's articulated nondiscriminatory reason for its actions was a pretext for sex discrimination, his claim related to the elimination of his job proceeds only under the direct-evidence *Price Waterhouse* approach, described above.

### *III. Longwell's Failure-to-Hire Claim*

Regarding Longwell's claim that the position of Security Coordinator should have been posted and that he should have been permitted to apply for that position, he cannot satisfy his burden of presenting a *prima facie* case.

The elements of a *prima facie* case in a failure-to-hire claim are (1) the plaintiff is a member of a protected class, (2) he was qualified for an *open* position; (3) he was denied that position; and (4) the employer filled the position with a person not in the same protected class. *Dixon v. Pulaski County Special School Dist.*, 578 F.3d 862, 867-68 (8th Cir. 2009) (emphasis added).

Here, there was no *open* position. Pennisi was given some additional duties, a raise, and a change in her job title. Longwell has cited no authority for the proposition that an employer may not change an employee's job duties, change an employee's job title, or give an employee a raise, without creating a new position and opening that position to internal and/or external applicants. While the changes in Pennisi's job may have relevance to Longwell's claim based on the adverse employment action, *i.e.*, the elimination of his job, the undisputed evidence shows that there is no genuine issue of material fact on his failure-to-hire claim, and OPAS is entitled to judgment as a matter of law on that claim.

### CONCLUSION

Few issues remain for trial. They are: (1) Can Longwell prove, more likely than not, that Bunker had an anti-male bias? (2) If so, can Longwell prove, more likely than not, that such anti-male bias was a motivating factor in OPAS's decision to eliminate Longwell's job? (3) If so, can OPAS prove, more likely than not, that its legitimate reasons, standing

alone, would have induced it to eliminate Longwell's position regardless of Bunker's bias? (4) And, if not, what are Longwell's damages?

Accordingly,

IT IS ORDERED:

1. Plaintiff David Longwell's Motion to Strike/Objection to Certain Evidence submitted by Defendant (Filing No. 49) is granted;

2. Defendant Omaha Performing Arts Society's exhibits found at Filing Nos.43-15 and 43-16 are deemed stricken for the purposes of the pending motion for summary judgment and have been given no weight or consideration by the Court;

3. Defendant Omaha Performing Arts Society's Objections to Plaintiff's Evidence Submitted in Opposition to Motion for Summary Judgment (Filing No. 54) are denied; and

4. Defendant Omaha Performing Arts Society's Motion for Summary Judgment (Filing No. 41) is granted in part, as follows:

    Plaintiff David Longwell's failure-to-hire claim is dismissed; and

5. The Motion for Summary Judgment is otherwise denied.

DATED this 14th day of, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge